UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CR No. 16-00011-JJM-LDA |
| v. | |
| | |
| JASON BOUDREAU | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Defendant is dangerous and recidivist sex offender. He has repeatedly sexually abused children, through his collecting and viewing of images of child sexual abuse involving children as young as infants in the instant case and in a prior state child pornography case, and through his hands on molestation of multiple children. The Defendant's access to and victimization of children has not been stopped despite prior custodial sentences, court supervision, the threat of the imposition of a suspended sentence, and his knowledge of ongoing law enforcement investigations.

Based on all of the 18 U.S.C. § 3553(a) factors, the Government recommends that the Defendant be sentenced to a term of 235 months, followed by a lifetime term of supervised release, and that the Court impose a suspicionless search condition as a condition of his supervised release.[1]

---

[1] If restitution cannot be determined by the date of Sentencing, the Government respectfully requests that a further hearing be set for a restitution hearing, as is permitted under 18 U.S.C. § 3664(b)(5).

1

## I.     BACKGROUND

On January 2, 2014, the Defendant was sentenced to a five-year suspended sentence in the state of Rhode Island for possession of child pornography.[2] PSR, ¶ 45. At the time of that sentencing, the Defendant had already been convicted for two prior offenses involving his hands-on contact with children[3] and he was also on pretrial release in a Connecticut case involving sexual communications with a 14-year-old girl and a Rhode Island embezzlement case. PSR ¶ ¶ 42, 43, 52, 53. Among his probation conditions for the 2014 state child pornography conviction, the Defendant was

- required to register as a sex offender;

- required to attend sex-offender counseling, as deemed necessary;

- prohibited from unsupervised contact with any child 17 years or younger, including by electronic means; and

- prohibited from searching for, viewing, and possessing child pornography.

See Dkt. No. 38, Ex. A; Dkt. No. 40, Order Denying Motion to Suppress (McConnell, J.).

In March 2015, only fourteen months after the Defendant was sentenced on the state child pornography case, and while subject to the above probation conditions, a video of an adult male engaging in sexual intercourse with a prepubescent female was uploaded to a website from an internet protocol address in use at the Defendant's

---

2 When he was sentenced for his state child pornography conviction, the Defendant was also sentenced for two separate state cases involving receiving stolen property and larceny. PSR, ¶ ¶ 45 and 48.
3 PSR, ¶ ¶ 42 (2009 simple assault on an 11-year-old girl), 43 (2010 2d degree sexual molestation involving a seven-year-old family member).

residence. PSR, ¶ 12.

On July 25, 2015, a probation compliance check was conducted at the Defendant's residence as part of a Sex Offender Law Enforcement Multidisciplinary Network (SOLEMN) sweep. That limited search did not reveal any evidence of illegal conduct. <u>See generally</u> Dkt. No. 40, Order Denying Motion to Suppress (McConnell, J.).

On November 20, 2015, the Defendant's residence was searched again. A forensic search of the Defendant's cell phone seized from his home showed 677 separate child sexual abuse images in the cell phone cache. The child sexual abuse images in this case include images of sexual penetration of toddlers and sexual acts involving infants. PSR, ¶ 15.

The Defendant's phone data also showed that within an approximately three-month period from August 16, 2015 to November 14, 2015, the Defendant accessed 671 images of child sexual abuse. Further, as charged in Count 19, over the course of one day, September 20, 2015, the Defendant accessed 76 separate images of child pornography. PSR, ¶¶ 13- 16.

The Defendant was not arrested after the November 20, 2015 search of his home. On December 28, 2015, after law enforcement conducted a forensic review of computer media seized from the Defendant's home in November 2015, a complaint and arrest warrant issued. <u>See</u> Dkt. 15-mj-00399-LDA-1. After initially agreeing to surrender, the Defendant did not surrender, but instead travelled to Connecticut, and on December 30,

2015, he was arrested at a bar in Branford, Connecticut.[4]

When arrested in Connecticut, the Defendant had another cell phone in his possession. A review of that cell phone showed that in the month that had passed since his home was searched and his cell phone was seized, the Defendant had begun collecting yet more child pornography. The SD card in the cell phone found on the Defendant upon arrest had 38 images of child pornography in a deleted folder, and 5 zip folders with an additional 67 images. The victims depicted in the images obtained from this second cell phone were consistent with the previously seized collection, pre-pubescent and young girls. PSR, ¶ 18.

The Defendant made his initial appearance before this Court on December 30, 2015, and has been held in custody since that date. Dkt. No. 6 (Order of Detention).

On February 16, 2016, the Defendant was charged by Indictment, and thereafter, on June 30, 2016, he was charged by Superseding Indictment. Dkt. Nos. 12 and 17

On January 23, 2017, the Government filed an Information giving notice of enhancement penalties based on the Defendant's prior convictions. Dkt. No. 34.[5]

On May 11, 2018, the Defendant has pled guilty to Count 19, Access with Intent

---

4 Defendant filed a civil lawsuit in the District of Connecticut against various members of the Branford Police Department and special agents of Homeland Security Investigations in which he alleged, inter alia, excessive force in connection with his arrest in this case.. Dkt. 17-cv-00589-SRU (D. Conn.), Dkt No. 113 (Amended Complaint). On March 20, 2020, after a prodigious number of motions by Defendant, the Court granted the motion for summary judgement, and Judgment entered for the Defendants. Dkt. Nos. 145, 146.
5 The Indictment and Superseding Indictment also gave notice of the mandatory minimum based on the prior convictions. Dkt. Nos. 12-1 and 17-1.

to View, and Count 34, Possession of Child Pornography, of the Superseding Indictment. The Defendant's pleas of guilty were unconditional and he waived all right to appeal if the convictions and sentences imposed by the Court are if the sentences were within or believe the sentencing guideline range determined by the Court. Plea Agreement, ¶ 12. He also agreed that he was subject to a mandatory minimum sentence as a result of his prior convictions. Plea Agreement, ¶ 6. Pursuant to the plea agreement, the United States will move to dismiss the remaining counts set forth in the Superseding Indictment at the Sentencing hearing.

## II.    DISCUSSION

A.    The 18 U.S.C. § 3553(a) Factors Support 235 Month Sentence.

The facts of this case, to which the Defendant has pled and the facts were are properly considered as relevant conduct, considered with the defendant's background, conclusively show that the Defendant has a persistent sexual interest in children, that has not been deterred or checked in any respect by sentences pronounced by prior Courts, conditions of probation, and pending law enforcement investigations.

1.    Nature and Circumstances of the Offense.

After presiding over numerous motions in this case, the Court is well aware of the Nature and Circumstances of the instant case, and the Government has summarized those facts above.

The child pornography found on the Defendant's phones obtained during the November 2015 search and during his December 2015 arrest show this Court who the

Defendant is – a man who has a demonstrated interest in viewing children, including infants and toddlers, as sexual objects and a man who has no regard for the harm occasioned to these children by his efforts to seek out and view these degrading images of sexual abuse that result in long term physical, emotional, and psychological harm to the depicted victim children.

The fact that the Defendant collected the images in this case, following two convictions for assaulting children and a recent conviction for possession of child pornography, while on pretrial release on another case involving inappropriate conduct with a child, and while subject to conditions prohibiting him from possessing such images and subject to a warrantless search as a condition of probation, presents one of the clearest indicators of the threat that he poses.

2. <u>History and Characteristics of the Defendant.</u>

The most notable characteristic of the Defendant, as it pertains to Sentencing, is the length of time over which he has a demonstrated sexual interest in children and the number of times he has acted on that interest, molesting multiple children and seeking out sexual abuse images of infants, toddlers, and pre-pubescent children.

The Defendant's History and Characteristics show, unquestionably, that he has a persistent sexual interest in children; that he has an ability to engage in children through family members and romantic partners and that he has not been deterred by prior convictions, probation conditions, or ongoing investigations. He presents is a significant danger to children, and a significant custodial term is warranted given his

history and the danger he presents to children.

In the ten years leading to the instant offense, he sought out and engaged in sexual conduct with at least three children (age four or five to eight, age seven, and age eleven) and had commenced a sexual relationship with a fourteen-year-old child.

> (a) **December 2005 to January 2006**: DCFY Investigation of Sexual Assault of the Four-Year-Old Daughter of the Defendant's Girlfriend.

In December 2005, a teacher observed Minor Victim #1,[6] the four-year-old daughter of the Defendant's girlfriend, with whom he lived, laying across another child in a classroom bumping up and down on the child. When the teacher asked the child what she was doing, she stated that she was squishing crotches and butts, and that it was a game "Big J" (the Defendant) taught her when her mother was at work.

During a forensic interview at Hasbro Hospital, Minor Victim #1 disclosed sexual abuse by the Defendant that included oral-vaginal and penile-oral penetration, and fondling. Minor Victim #1 also said that her mother told her and her sister "not to talk about Jay today." Minor Victim #1 and her sister were thereafter removed from her mother's and the Defendant's home and placed with their father.

In January 2006, in a subsequent interview, Minor Victim #1 was not able to articulate what the Defendant did. The investigation did not result in a criminal case, and Minor Victim #1 and her sister were returned to the home they shared with their

---

[6] The identities of the various children described in this Section are set forth in the PSR. To protect the privacy of the respective victims, the Government will refer to each victim by number.

mother and the Defendant. PSR, FN 1.

     (b) **July 2009**: Defendant Had Sexual Contact with an Eleven-Year-Old Girl and Was Convicted of Simple Assault.

In July 2009, the Defendant molested an eleven-year-old girl, Minor Victim #2, who was friends with the Defendant's son and the Defendant's girlfriend's daughter, Minor Victim #1 (the alleged victim of the 2005 and 2009 DCYF investigations described herein). Minor Victim #2 reported that the Defendant drove Minor Victim #2 and his other children to a baseball game. After dropping his older son at the game, the Defendant drove from the baseball game to a parking lot with Minor Victim #2 in the passenger seat, and his younger son (approx. age 4 years old), in the back seat. He unbuckled the Minor Victim #2's seatbelt, and then kissed her on the mouth and tried to put his tongue in her mouth. He attempted to kiss her again, and she pulled away from him. Minor Victim #2 was able to avoid further physical contact with the Defendant by moving into the backseat of the car, where the Defendant's son was sitting during the events. Minor Victim #2 also reported that earlier in the day, while at his home, the Defendant was touching and grabbing her arms and putting her on his lap, all of which made her uncomfortable.

The Defendant pled to Simple Assault for this sexual conduct with a child. PSR, ¶ 42.

     (c) **July 2009**: Subsequent DCFY Investigation of Sexual Assault of the Children of the Defendant's Girlfriend.

After the events involving Minor Victim #2, DCYF re-interviewed Minor Victim

#1 and her sister, the children of the Defendant's girlfriend, who had been interviewed in 2005 and 2006. <u>See</u> supra II.A.2.b. Both girls were still living in a home with their mother and the Defendant, and also in their father's home in Attleboro, MA.

In July 2009, when interviewed in their father's home by Child Protective Service investigators, Minor Victim #1 said that she too scared to tell her mother about the abuse by the Defendant and that she was afraid of the Defendant. She told investigators that she was afraid she would have to leave her home if she talked about the abuse.

In August 2009, Minor Victim #1 was interviewed at Day One. In the video, which was provided to Probation and the Defendant, although Minor Victim #1 was unable to identify the names of body parts, she reported that

- The Defendant had touched her on the part of her body that she uses to pees and her "bum bum" with the part of his body that he uses to pee.

- The Defendant used his mouth to touch the part of her body she uses to pee.

- The Defendant touched her mouth his mouth with a different kind of kiss that she called a "french kiss." When asked, she could not describe what a french kiss was but said that she learned the term from her sister.

Minor Victim #1 said that the last time that the Defendant did this to her she was eight years old and that she was at home. Minor Victim #1 said that the Defendant "usually" brings her down into the living room or into her mom's bedroom, by carrying her there when she is sleeping.

Minor Victim #1 said that the Defendant began touching her when she was about five years old. She said the first time he got away with it. She said that the first time that

she told what the Defendant had done to her, she was removed from her mother's home and went to live with her father. Minor Victim #1 also said that she saw the Defendant try to kiss her sister too.[7] PSR, ¶ 43.

    (d) **June 2010**: Defendant Sexually Molested a Seven-Year-Old Child (Minor Victim #3) and Was Convicted of Second-Degree Child Molestation.

Approximately one year after the Defendant molested the eleven-year-old girl, the Warwick Police Department, received a report involving new sexual contact between the Defendant and a young girl, this time, his seven-year-old niece, Minor Victim #3. The seven-year-old child's father reported that he was playing with his daughter and that she tried to kiss him with an open mouth and using her tongue. When he told his daughter that was not proper, she said that was how Uncle Jason (the Defendant) kissed her.

Minor Victim #3 told her father that the Defendant would take her upstairs, making sure that her mother and father were downstairs and that he would tickle her in her private area in the bathroom. When interviewed by investigators, Minor Victim #3 further disclosed that there were several instances in which her "Uncle Jason" would tickle her "coconut," which is how she referred to her vagina. Minor Victim #3 couldn't recall the number of times but described the most recent instance. She said that the Defendant took her hand and led her into the upstairs bathroom, and that she knew

---

7 Minor Victim #1's sister was also interviewed. Although she denied any abuse, the investigator noted that she appeared scared and angry and that her eyes watered up during the interview.

from past instances that he would kiss and tickle her. Minor Victim #3 said that the Defendant held her head in both hands, and kissed her, putting his tongue in her mouth and that he tickled her "coconut" with his hands over her underwear but under her pants. Minor Victim #3 said that afterwards, the Defendant gave her money to get candy from a vending machine in the home and told her not to tell anyone.

The Defendant's molestation of Minor Victim #3, his seven-year-old niece, resulted in the defendant's January 2014 conviction for Second Degree Child Molestation in Kent County. He was sentenced to eight years, two years to serve, six years suspended, and was required to attend sex offender program and to register as a sex offender. PSR, ¶ 43.

    (e) **August 2010 – June 2011**: Defendant Alleged to Have a Sexual Relationship with a Fourteen-Year-Old Girl (Minor Victim #4).

In August 2010, the Defendant began a sexual relationship with Minor Victim #4, a 14-year-old girl, and engaged in what would be regarded as "grooming" behavior. The Defendant's efforts to engage with Minor Victim #4 continued until June 2011, when her parents discovered the relationship and contacted the police. The Defendant knew Minor Victim #4 because he had previously been married to her aunt.

According to Minor Victim #4, during the course of this "relationship," the Defendant gave her a cell phone, on which they communicated via text message; he brought her money and left it in envelopes or containers in locations he described to her; and he brought her alcohol. Minor Victim #4 told investigators that the Defendant

met her in a school parking lot where they held hands and he tried to kiss her. Minor Victim #4 told investigators that she said no, and the Defendant told her it would not happen again. She also told investigators that the Defendant texted with her and offered her money for him to give her oral sex. Minor Victim #4 said that he texted sexual things in several messages, but always said he was kidding afterwards. According to the victim, the Defendant also sent her text messages about her sexual activities with another minor.

Minor Victim #4 also told investigators that she recalled an incident in her aunt's home when she was approximately six or seven years old. She said that she was playing hide and seek in the basement. She described that the Defendant had kissed her on the lips and that she thought her pants were pulled down while her back was to him. She said that when she brought that incident up to the Defendant, he would change the subject or say that he was sorry and that he wanted her to be happy.

This conduct involving Minor Victim #4 has been charged in Superior Court in Connecticut as Felony Risk of Injury to a Child, Conn. Gen. Stat. § 53-21(a)(1), and is pending.

(f) **July 2011**: The Defendant is Arrested for Possession of Child Pornography.

In July 2011, the Defendant's employer discovered child pornography on his work computer, which his employer subsequently turned over to the Warwick Police

Department.[8] The Defendant was thereafter charged with Possession of Child

Pornography. In January 2014, he pled guilty to that charge, as well as two property

theft crimes, and was sentenced to a five-year suspended sentence. [9] PSR, ¶ ¶ 45, 46, 48.

As discussed above, the Defendant was placed on specific conditions addressing his

established sexual interest in children, and was required to register as a result of this

conviction.

      (g) **December 2015**: Within A Month After Law Enforcement Seized his Child
             Pornography, He Had Collected and Viewed More Child Pornography.

      As described above, on November 20, 2015, law enforcement officers searched

the Defendant's home, and seized a phone that contained child pornography. The

Defendant was not arrested after the search of his home. He was arrested

approximately one month later. In the one month since investigators had searched his

home, despite his awareness that law enforcement was actively investigating him for

possession of child pornography, the Defendant had again began collecting, viewing,

and downloaded images of child sexual abuse (child pornography) and had those

images on a phone upon his arrest in Connecticut.

---

8 The Defendant filed a civil litigation in the District of Rhode Island in which he alleged
multiple claims under 42 U.S.C. § 1983 and the Electronic Communications Privacy Act (ECPA),
18 U.S.C. § 2511, against the various individuals who participated in the events leading up to
and following his arrest, including his former employers and various law enforcement officers.
The Court granted the Defendants' motion for summary judgement, which was affirmed by the
First Circuit. See generally Boudreau v. Lussier, et al., 901 F.3d 65 (1st Cir. 2018)
9 During the pendency of the instant case, the Defendant filed a post-conviction relief motion
seeking to vacate this conviction. RI Superior Court, Dkt. C.A. No. PM-2016-5158. On March 11,
2021, Judge Lanphear denied the Motion.

3. <u>Protect the Public from Further Crimes.</u>

The Government's recommended sentence is necessary to "protect the public from further crimes of the Defendant." The Defendant's history shows not only a long-standing sexual interest in children, but also that he has repeatedly acted on this sexual interest with hands on offending, and by seeking out images of sexual abuse of young children being raped and molested. As described above, the Defendant's history also shows an ability to use his relationship, family relationships or those with romantic partners, to gain access to children, to manipulate and groom those children for future sexual assaults, and his commission of assaults and sexual contact with children.

The Defendant has been well aware of the illegality of his conduct, and yet he continued to offend with children, and seek out and possess child pornography despite being on probation and prohibited from collecting, viewing, and possessing child pornography. Notably, after his child pornography collection was seized when his home was searched in November 2015, rather than be daunted by the discovery that he had committed a new child pornography offenses, which would likely be a probation violation, within a month, the Defendant obtained a new cell phone and began using that phone to obtain, view, and store numerous child pornography images. Prior courts have tried to send a message and tried to supervise the Defendant while out of custody, and all such efforts have failed. The Defendant has shown that he cannot and will not refrain from engaging in conduct that is harmful to children. A lengthy custodial term is needed in this case, for this Defendant, to protect the public from the danger that he

presents.

4. <u>Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment.</u>

The Defendant stands before this Court for sentencing on his second child pornography offense committed in a five-year period. His actions leading to this case, and following conviction on his other cases, including his state child pornography case, show that he has yet to understand the seriousness of the instant offense and have any respect for the law. As noted in the PSR, the RI Probation Officer stated that there were ongoing concerns involving the Defendant while he was on Probation. She related an incident with a compliance check when family attempted to hide him from law enforcement officials and the probation officer during a home visit. PSR, ¶ 55. Only a lengthy custodial sentence will impress upon the Defendant the seriousness of this crime, send a message to him to respect the law, and provide just punishment for the victims in this case.

5. <u>A Lifetime Term of Supervised Release is Necessary and Appropriate in This Case.</u>

Whatever the sentence imposed by this Court, the United States submits that a lifetime term of supervised release is necessary given this Defendant's history, inability to comply with his previous conditions of probation, and his lengthy history of criminal acts involving children.

Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." <u>United States v. Johnson</u>, 529 U.S. 53, 59 (2000). Supervised release is not

a punishment in lieu of incarceration. <u>United States v. Granderson</u>, 511, U.S. 39, 50 (1994). If being on supervised release were the punitive equivalent of being in prison, if it served the just deserts function as well, there would be no need to put most criminals in prison we could put them on supervised release instead. <u>United States v. Irey</u>, 612 F.3d 1160, 1210 (11th Cir. 2010).

As it relates to the child pornography counts, the Guidelines have a Policy Statement that recommends a lifetime term of supervised release. USSG § 5D1.2(b)(2). The life term recommendation contained in Section 5D1.2(b) reflects powerful evidence indicating that recidivism rates for sex offenders do not appreciably decline as offenders age. *See* H.R. Rep. No. 107-527, at 2 (2002) (discussing the merits of a life term of supervised release for sexual offenders). Because, in sex crimes cases, there is no reason to believe that the need for supervision inherently decreases with time, Congress found lifetime supervised release to be appropriate and directly inserted such a recommendation into the Guidelines. <u>Id.</u> More specifically, passage of 18 U.S.C. § 3583(k) recognized the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison. Many of these offenders need long term or lifetime monitoring and oversight. H.R. CONF. REP. NO. 108-66, at 49-50 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 684. This Defendant is certainly one of the offenders who

requires lifetime supervision.

      6.  <u>Warrantless Search Condition as a Special Condition of Supervised Release</u>.

The PSR includes a recommendation that the Defendant be subject to the following

search condition:

> The defendant shall permit the probation officer, who may be
> accompanied by local, state, or federal law enforcement authorities, upon
> reasonable suspicion of a violation of supervision, to conduct a search of
> the defendant's residence, automobile, workplace, computer, and other
> electronic communication or data storage devices or media.

PSR, Recommended Conditions of Post-Conviction Supervision.  Respectfully, the

recommended search condition is not sufficient for this Defendant.  This Defendant

should be subject to a ***suspicionless*** search conditions as follows:

> The defendant shall permit the probation officer, who may be
> accompanied by local, state, or federal law enforcement authorities, ***with***
> ***or without a reasonable suspicion of a violation of supervision***, to
> conduct a search of the defendant's residence, automobile, workplace,
> computer, and other electronic communication or data storage devices or
> media.

This Defendant has been on probation with a search condition and it did not prevent

continued offending with additional activity involving child pornography and

prohibited contact with a fourteen-year-old girl.  His risk of recidivism is high as shown

by his recent history.  The Probation Department must be permitted to have access to

the Defendant's computer media, without the need to develop reasonable suspicion, to

monitor this Defendant's compliance and ensure that future victims are not harmed by

him once he begins his term of supervised release.

It is well-established that the purpose of supervised release is to provide enough supervision to prevent recidivism on the part of the offender. <u>See</u> U.S.S.G. Ch. 7 Pt. A(4) (stating that "the purpose of ... supervised release should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct"); <u>see also</u> 18 U.S.C. § 3583(d) (requiring courts to balance the defendant's liberty interest with the need to afford adequate deterrence to criminal conduct in imposing conditions on supervised release). . . . Searches based on some particularized level of suspicion, by way of contrast, would likely not be as effective at deterring future crimes of possession since the defendant could easily conceal such wrongdoing.

<u>United States v. Hanrahan</u>, 508 F.3d 962;970-71 (10th Cir. 2007) (upholding warrantless search condition for a defendant convicted of being a felon in possession of a firearm.). This analysis is equally, if not more appropriate in this case, and has been applied to defendants convicted of child pornography offenses. <u>See</u> <u>United States v. Sulik</u>, 807 Fed. Appx. 489, 492 (6th Cir. 2020) (affirming imposition of a suspicionless search condition for a supervised releasee convicted of possession of child pornography) (<u>citing</u> <u>Samson v. California</u>, 547 U.S. 843 (2006)); <u>United States v. Tafelmeyer</u>, 584 Fed. Appx. 766, 767-78 (9th Cir. 2014) ("suspicionless searches will deter [defendant] from possessing more child pornography, an activity that is easily concealed and difficult to discover without a search. **This added deterrence is all the more necessary in light of [defendant]'s demonstrated inability to abstain from viewing pornography while on pretrial release**)(emphasis added); <u>United States v. White</u>, 244 F.3d 1199 (10th Cir. 2001) 244 F.3d 1199, 1207-1208 ("[d]espite the span of years between [defendant]'s prior conviction for inappropriate behavior with a child, the record of his present conviction underlying two violations of supervised release for drinking alcohol, counsels the

reasonableness of this special [suspicionless search] condition"). See also United States v. Cervantes, 859 F.3d 1175, 1184 (9th Cir. 2017) (in a counterfeit currency case, the facts "justified the district court's belief that [defendant] posed an exceptionally high risk of re-offending during his term of supervised release, and that subjecting him to suspicionless searches would be necessary to mitigate that risk").

This Court has the facts to, and should, make the requisite finding that this proposed suspicionless search condition should be imposed for the Defendant.

B. The First Circuit Has Rejected the Defendant's Challenge to the Child Pornography Sentencing Guidelines.

Defendant's argument that this Court should give little consideration to the Guideline calculation and that the Guidelines have no reasonable relation in this case ignores recent First Circuit law. In 2018, the First Circuit considered and rejected the same argument now made by the Defendant and rejected the argument that the Guidelines lack merit based on the involvement of Congress in developing the child pornography Guideline.

> Given the breadth of the factors set forth in section 3553(a), there is no reason to presume that a congressional directive cannot provide a useful starting point in considering "the nature and circumstances of the offense" and "the need for the sentence imposed ... to reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(1), (2)(A). We also note that no other circuit has adopted the approach Aquino-Florenciani urges, and indeed, several have rejected it. See, e.g., United States v. Fry, 851 F.3d 1329, 1333–34 (D.C. Cir. 2017); United States v. Henderson, 649 F.3d 955, 964 (9th Cir. 2011).

> While district courts may certainly conclude that the guidelines sentencing range in child pornography cases is harsher than necessary in many cases, there is no requirement that a district court must categorically

19

reject the child pornography guidelines based on their provenance.

United States v. Aquino-Florenciani, 894 F.3d 4, 8 (1st Cir. 2018).

As part of his plea agreement, the Defendant agreed that Guideline enhancement he now argues should not be given great weight. Plea Agreement, ¶ 4. To stipulate to these enhancements in the Plea Agreement, but now argue that the Court "should not give great weight to these enhancements and the resulting advisory sentencing range," is, at a minimum, contrary to the terms, if not the spirit, of the Plea Agreement. The Defendant's argument also ignores that Courts have credited the Guideline enhancements that the Defendant challenges. First, the attack on the enhancement for conduct involving images of prepubescent conduct has been recognized as an appropriate enhancement given the "particular harm to and vulnerability" of children under the age of twelve. See United States v. Kiefer, 760 F.3d 926 (9th Cir. 2014). Further, the defendant's challenge to the application of the use of a computer enhancement has been similarly rejected. In Kiefer, the Ninth Circuit held that

> This argument has been roundly rejected by our sister circuits. As the Second Circuit observed in United States v. Reingold, "the use of a computer is not essential to the act of distributing child pornography. A person can traffic in child pornography without using a computer much like one could commit a robbery without the use of a gun." 731 F.3d 204, 226 (2d Cir.2013) (citation and internal quotation marks omitted). Therefore, the application of § 2G2.2(b)(6) does not result in impermissible double counting because the increase in a defendant's sentence for use of a computer accounts for harm that is not fully reflected in the base offense level.

Id. at 930-931.

III.    CONCLUSION

For the reasons stated above, the Government's recommended 235-month sentence is reasonable and appropriate for this Defendant. This sentence will consider the nature of this case, the history and characteristics of this Defendant, reflect the "nature and circumstances" and "seriousness of the offense," give proper consideration for the "history and characteristics" of the Defendant, provide "just punishment," and will hopefully "afford adequate deterrence" as to the Defendant and others who seek to patronize and thereby create a market for child sex abuse images.

Respectfully submitted,

RICHARD MYRUS
ACTING UNITED STATES ATTORNEY

DENISE M. BARTON
Assistant U. S. Attorney
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
denise.barton@usdoj.gov

## <u>CERTIFICATION OF SERVICE</u>

On this 16th day of November 2021, I caused the within Motion to Continue Empanelment to be filed electronically and it is available for viewing and downloading from the ECF system.

<div style="margin-left: 50%">

/s/Denise M. Barton
DENISE M. BARTON
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email: denise.barton@usdoj.gov

</div>