RECEIVED
NOV 29 2021
U.S. DISTRICT COURT
DISTRICT OF R.I.

11/21/21

Clerk of the Court
U.S. District Court
One Exchange Terrace
Providence, RI 02903

Re: U.S. v. Boudreau
    Case 16-11-JJM (criminal)

Dear Court Clerk,

Enclosed please find my Motion to Correct or Modify Sentence in Accordance with Fed. R. Crim. P. 35(a). Please enter my motion on the docket.

Kindly ask the Court to rule on the motion on or before December 3, 2021 in accordance with Federal Rules of Criminal Procedure 35(a). Please confirm receipt of my motion.

Thank you,

Jason Boudreau
Plymouth County Correctional Facility
26 Long Pond Road
Plymouth, MA 02360

(1)

United States District Court
District of Rhode Island

RECEIVED
NOV 29 2021
U.S. DISTRICT COURT
DISTRICT OF R.I.

United States of America

v.                    Criminal Case No. 16-11-JJM

Jason Boudreau

### Defendant's Motion To Correct or Modify Sentence Under Federal Rule of Criminal Procedure 35(a)

Now comes the Defendant, Jason Boudreau, and hereby moves this Honorable Court to Correct or Modify the Defendant's sentence that was imposed on November 18, 2021.

Fed. R. Crim. P. 35(a) provides that "within 14 days after sentencing, the Court may correct a sentence that resulted from arithmetical, Technical, or other clear error."

### Argument

**I. The Government Misrepresented That Defendant's State Criminal Charges Were Reduced During The Plea Bargaining Process.**

During sentencing, the Government misrepresented that the State had seriously underrated the Defendant's state criminal offenses. These representations were, in fact, inaccurate

and the government's misrepresentations were intentional in order to persuade the court to impose a higher sentence.

In 2009, the Defendant was charged with Simple Assault. The Defendant pled No Lo Contendere to that original charge. The charge was not reduced in exchange for the plea. The Court sentenced the Defendant to 1-year probation, which the Defendant completed.

In 2010, the Defendant was charged with one count of 2nd Degree Child Molestation, which under Rhode Island law, is described as any inappropriate contact with a minor under 16, over clothing. The Defendant was not detained during the pendancy of that case.

A year later, in July 2011, the Defendant was charged with possession of Child pornography in Rhode Island for possessing eleven (11) images of child pornography, and one count of Risk of Injury in Connecticut. See R.I. Case P2-2012-0841A and Connecticut Case W11D-CR13-012028-S.

At this time, the Defendant was detained at the Adult Correctional Institution ("ACI") in Rhode Island. The Defendant was released on bail in December 2011.

In 2012, the Defendant pled no lo contendere to the 2nd Degree case. The charge was not reduced in exchange for the plea. Defendant was sentenced to serve two (2) years at the ACI. During the Defendant's incarceration in 2012 and 2013, the Defendant voluntarily participated in the ACI's residential Sex Offender treatment program. This residential

(3)

program required Defendant to live in a special housing unit that placed numerous additional restrictions on the Defendant as part of the rehabilitation goals. The sex offender treatment focused on Defendant's 2nd Degree case, and focused on ensuring that Defendant would not re-offend with a contact offense. To be sure, Defendant has not committed a contact offense in over ten (10) years.

In August 2013, Defendant was released and the Defendant participated in weekly community-based sex offender treatment with Counseling Services of Rhode Island. Again, this treatment focused on Defendant's 2nd Degree case, and focused on ensuring that Defendant would not re-offend with a contact-offense.

Both the R.I. State Court and Connecticut Court recognized Defendant's rehabilitation efforts and agreed to probation-only sentences for the 2011 pending cases.

During the sentencing hearing, the Court questioned the government as to why the State Courts charged what they did, and why they agreed to what the Court described as low sentences.

The Government then misrepresented to the Court that the original charges were much more serious and that the State Courts lowered the charges in order to obtain a plea. The Government's factual misrepresentations were intentionally designed to manipulate this Honorable Court into finding that Defendant's State cases were far worse than what the Defendant pled to.

Because of this factual misrepresentation, Defendant believes that the Court imposed a sentence greater than necessary, and Defendant respectfully requests that the Court consider

(4)

resentencing the Defendant while disregarding the Government's factual misrepresentations.

II. The Government Misrepresented The 2005 DCYF Investigation of Defendant.

In the Government's Sentencing Memorandum and oral arguments at Sentencing, the Government stated, as a matter of fact, that Defendant had engaged in sexual assault of a minor in 2005. See Government Sent. Memo at page 7.

However, the Government did not inform the Court that the 2005 DCYF investigation resulted in a trial before the Rhode Island Family Court before the late Honorable Judge Rocha. The Family Court found, as a matter of fact, that Defendant did not engage in any sexual assault. The Court also found, as a matter of fact, that the DCYF investigators had fabricated evidence, and lied in their reports and testimony, including fabricating the allegations from the alleged victim. To be sure, the Family Court issued scathing comments regarding the DCYF investigators in its decision.

Here, the Government, aware of the Family Court's findings of fact, still chose to misrepresent the facts and circumstances of that case to this Honorable Court in order to persuade this Court to impose a more severe sentence on the Defendant.

At Sentencing, the Government should have been estopped from presenting facts contrary to the factual findings of the

(5)

R.I. Family Court, and the Government should have been forthcoming with the Family Court's findings of fact rather than attempting to manipulate this Honorable Court.

Because of these factual misrepresentations by the Government, Defendant believes that the Court imposed a sentence greater than necessary, and Defendant respectfully requests that the Court consider resentencing the Defendant while disregarding the Government's factual misrepresentations.

III. The Government Misrepresented The Number Of Images That Were Viewed and/or Possessed By The Defendant

At sentencing, the Government argued that Defendant had possessed over 600 images to warrant the enhancement for Number of images.

However, with regard to the Count of knowingly accessed with intent to view, the Government misrepresented that the Defendant had viewed all of the images that were in the operating system's cache files, and the Government misrepresented to the Court the definition of a charge of "knowingly access with the intent to view child pornography." Because of these misrepresentations, the Court miscalculated the guideline enhancement for number of images.

See, United States v. Kuchinski, 469 F.3d 853 (9th Cir. 2006). In the District Court at sentencing, the Court held Kuchinski was responsible for at least 13,904 images, all

(6)

residing in his internet cache files. The Ninth Circuit said it did not doubt Kuchinski had "accessed the web page that had those images somewhere upon it", Id. at 862. But the Court was troubled by the fact that nearly 14,000 additional images were counted against him at sentencing with no regard for "whether he actually saw the images", Id.

As the Court explained, a problem exists because an image may wind up in internet cache just by being displayed on a website accessed by the Defendant even if the Defendant does not click on the image, enlarge it, look at it, or otherwise do anything with it.

To be sure, here the Government did not argue that the Defendant clicked an image, enlarged it, or saved the image. Moreover, the Government did not argue that the Defendant's internet search history contained any searches for child pornography.

"As a user is viewing a webpage, the computer's operating system is generally automatically downloading the page to internet cache, so it can be displayed more quickly from the hard drive if the user returns to that page in the reasonable near future. It does not make sense to count against the user images that his computer downloaded to internet cache without his awareness", United States v. Carpagna, 2013 U.S. Dist. LEXIS 115002 (D. Montana 2013).

For that reason, the Kuchinski court held that "it was not proper to consider the cache file images when Kuchinski's offense level for guideline purposes was calculated", Kuchinski,

(7)

469 F.3d at 863 (emphasis added).

Here, the Court calculated five (5) offense level points against Defendant because of the inclusion of the images in the Internet cache file. The Defendant should have only received a two (2) point enhancement because he possessed less than 150 images that were not part of the internet cache file.

This correct guideline calculation would decrease the Defendant's offense level from 33 to 30, resulting in a guideline sentence range of 135-168 months. Courts have held that errors that affect the ultimate guideline range or sentence require resentencing, see, United States v. Faulkner, 926 F.3d 266, 275 (6th Cir 2019)

Additionally, the Government did not state how many images were unique and how many were duplicative, leading to an inflated guideline enhancement. Further, the Government did not state whether the images possessed on the December 2015 cell phone were different from any of the internet cache files or the November 2015 cell phone.

Because of these factual misrepresentations by the Government regarding the number of images, which ultimately affected the guideline range, the Defendant believes that the Court imposed a sentence greater than the corrected guideline range. The Defendant respectfully requests that the Court resentence the Defendant using the corrected guideline enhancement under 2G2.2(B)(7)(A).

⑧

## IV. The Court Did Not Factor The Defendant's Past and Present Rehabilitation Efforts In Determining The Sentence

At sentencing, the Government ignored the Defendant's rehabilitation efforts. As stated above, from 2012 to 2015, the Defendant's sex offender treatment focused on ensuring that Defendant did not re-offend with a contact offense. That rehabilitation proved effective since Defendant did not re-offend with a contact offense. In 2012 and 2013, the Defendant voluntarily participated in sex offender treatment at the ACI in Rhode Island.

From 2013 to December 2015, the Defendant participated in weekly sex offender treatment with Counseling Services of Rhode Island through clinician Shawn Thomas.

In 2015, clinician Shawn Thomas provided monthly reports to Defendant's probation officer. Each of those reports indicated that Defendant's risk level was "stable". During 2015, these clinical reports stated the Defendant's ongoing stress regarding obtaining and retaining employment because Defendant was a sex offender and had been fired previously because of such, and stress regarding Defendant's ex-wife's Multiple Sclerosis diagnosis and the impact it would have on Defendant's children.

In September 2015, clinician Shawn Thomas performed a Sex Offender Needs Assessment Rating (SONAR), which determined that Defendant was at a low to low moderate

(9)

risk for offending a contact offense. At this time, Clinician Thomas stating that Defendant's life issues "have not only been anxiety-provoking, but have continued to be very depressing for Mr. Boudreau".

The October 16, 2015 report of Clinician Shawn Thomas stated that Defendant had been "very candid" during his treatment sessions.

Importantly, the report stated the following regarding the progress of treatment:

"Regarding Mr. Boudreau's progress in treatment, he had been working on his autobiography... After completing his autobiography, he will then move on to work on other treatment assignments. The major treatment assignments worthy of note will be required of him are to map out his Deviant Cycle, write letters of clarification to his victim(s), as well as other people affected by his sexual offending. These letters are for treatment purposes and not sent. Mr. Boudreau will also construct an appropriate relapse prevention plan, to address what he has learned through treatment, and how he intends to prevent re-offending. Since I began treating him, he remains the <u>only</u> member of his treatment group to <u>never</u> have missed a session." (emphasis added)

As the Court can see, Sex Offender treatment is not the same as a 90-day drug rehabilitation program. Sex

(10)

offender treatment is a longer process, and one that Defendant was committed to.

Once incarcerated at the Wyatt Facility, the Defendant did not do nothing at all, like the majority of detainees detained on a sex offense. Instead, Defendant voluntarily participated in the sex offender treatment program as well as other rehabilitation programs to ensure that Defendant possessed all of the tools and knowledge necessary to not re-offend a contact or non-contact offense. The Defendant recieved voluminous certificates of completion of numerous sex offender treatment modules.

The government's argument that these rehabilitation efforts don't matter is non-sequitar. The record clearly demonstrates the Defendant's commitment to rehabilitation and his commitment to not re-offend.

In 2019, the Defendant's attorney arranged to have the Defendant meet with a psychologist to evaluate the Defendant. The psychologist subsequently detailed, in writing, the specific sex offender treatment that Defendant should engage in to reduce any risk of recidivism. The Defendant requested a recommendation from this Court for placement at FMC-Devens to ensure that Defendant could engage in the recommended treatment.

At sentencing, the Government argued that the Defendant's risk of re-offending was 100%, however, the Government failed to present any expert opinions or reports regarding

the Defendant's recidivism risk, in contravention of Federal Rules of Evidence 702. The Government presented no evidence to contradict the Defendant's documented psychological evaluations from 2015 and 2019.

The Government argued that because Defendant committed the instant offense while in treatment, that it demonstrates that the Defendant will re-offend upon release.

However, the record and research bellies the Government's argument. According to the computer forensics report, from August 2015 to November 2015, the Defendant accessed with the intent to view images. However, on numerous occasions the report stated that Defendant would only access 1 or 2 images on a given day, and that days and weeks would separate each attempted view, demonstrating Defendant was not an active daily viewer as the Government argued.

Further, while the phone in Defendant's possession during his arrest in December 2015 contained approximately 100 illegal images, there was no evidence that Defendant had accessed those images after the November 2015 police search of the Defendant's home, and it is undisputed that the December 2015 cell phone did not contain any illegal images in its internet cache.

The Government requested a sentence of double the mandatory minimum sentence because of Defendant's brief and unfortunate relapse.

(12)

The Court should re-sentence the Defendant giving the proper weight and consideration to Defendant's rehabilitation efforts.

V. The Defendant's Sentence Creates A Disparity within This District.

Despite Defendant's voluntary and active participation in Sex Offender Treatment programs, this Court sentenced Defendant to 235 months imprisonment followed by lifetime supervised release. That Sentence creates a disparity in sentencing in this District.

In the matter of United States v. Adam Cobb, Case No. 16-CR-6-JJM-PAS, this Court sentenced Mr. Cobb to 60 months imprisonment and 10 year supervised release. The conduct that led to that sentence included: 1) Mr. Cobb distributed images of child pornography; 2) Mr. Cobb had a minor from the United Kingdom send him child pornography images of herself via the internet; 3) Mr. Cobb traveled to the U.K. and brought the minor back to the United States, unbeknownst to the minor's parents; 4) Mr. Cobb produced images and videos of child pornography by recording sexual acts between himself and the minor; 5) Mr. Cobb's receipt of child pornography from the minor had been ongoing for at least two (2) years; 6) That during the same time, Mr. Cobb had engaged in sexually explicit online communications with another minor and was attempting to entice that minor for sex; 7) that Mr. Cobb distributed child

(13)

pornography images of the 2nd minor; and 8) that Mr. Cobb bragged about his unlawful conduct to individuals on the internet. See, United States v. Cobb, 350 F.Supp.3d 64, 66-69 (D.R.I. 2018)(Hon. John J. McConnell, Jr.)

Mr. Cobb did not participate in any pre-arrest treatment and Mr. Cobb did not participate in any sex offender treatment while detained pre-sentence at the Wyatt Detention Facility.

Despite the disturbing facts of Mr. Cobb's case, the U.S. Attorney's office and this Court agreed to sentence Mr. Cobb to only 60-months imprisonment. Mr. Cobb's contact offense conduct and engagement in child pornography spanned years.

Here, Defendant's 2009 and 2010 contact offenses were single incidents, and did not involve the production or distribution of child pornography, and unlike Mr. Cobb, the Defendant voluntarily engaged in post-arrest Sex Offender Treatment. Despite these facts, this Court sentenced the Defendant to four (4) times the imprisonment of Mr. Cobb.

In the matter of United States v. Peter Hiver, Case No. 12-117 WES, the Court sentenced Mr. Hiver to 12-months imprisonment for possession of child pornography. Mr. Hiver then repeatedly violated his supervised release by viewing and possessing child pornography. Although that conduct would trigger a 10-year mandatory minimum and other enhancements, this Court and the U.S. Attorney agreed to not sentence Mr. Hiver to the 10-yr mandatory minimum, despite his numerous and

(14)

repeated violations of supervised release, including violations of 18 USC 2252(a)(4). See, Case 12-117WES, docket no. 58 (recounting Defendant's history of supervised release violations), and United States v. Hivas, 2020 U.S. Dist. LEXIS 13794 (D.R.I. 2020).

 The Court should consider resentencing the Defendant to avoid such sentencing disparities in this District.

## Conclusion

 For all the reasons stated herein, the Defendant respectfully requests that the Court resentence the Defendant in accordance with Fed. R. Crim. P. 35(a).

Respectfully Submitted,      Dated: November 18, 2021

*[signature]*

Jason Boudreau
Plymouth County Correctional Facility
26 Long Pond Road
Plymouth, MA 02360

(15)

## Certification

I, Jason Boudreau, hereby certify that I mailed a copy of this motion to U.S. Attorney Denise Barton, 50 Kennedy Plaza, Providence, RI 02903 and attorney Kevin Fitzgerald, 10 Weybosset Street, Providence, RI 02903 on November 22, 2021.

*/s/ Jason Boudreau*

Jason Boudreau